IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JACOB HALSOR,<br><br>Plaintiffs,<br><br>vs.<br><br>BEST CHOICE CONSTRUCTION LLC; RYAN DALBEC; RAIHANA NADEM; and BRIAN LOWELL NASH, II;<br><br>Defendants. | Case No. 3:20-cv-00063-JMK<br><br>**ORDER GRANTING RECONSIDERATION AND GRANTING MOTION FOR SUMMARY JUDGMENT** |

Before the Court at Docket 93 is the United States of America's ("United States'") *Motion for Reconsideration* of the Court's order denying summary judgment. Defendants Brian Lowell Nash II and Ryan Dalbec, who are proceeding *pro se*, did not respond.

For the following reasons, the United States' motion is **GRANTED**. Partial summary judgment on liability is warranted.

## I. BACKGROUND

This is an action arising under the False Claims Act ("FCA" or "the Act"), 31 U.S.C. § 3729 *et seq.*, for damages and civil penalties arising out of an alleged bribery

scheme designed to win bids for federal contracts.[1] The following facts are undisputed unless otherwise noted.

In 2019, Mr. Nash was an enlisted member of the United States Air Force and served as a contract specialist at Joint Base Elmendorf Richardson ("JBER") in Anchorage, Alaska.[2] As part of his duties as a contract specialist, Mr. Nash was authorized to award and administer contracts with values up to $250,000.[3] By virtue of his position, he had access to non-public information, such as competitor bid information and Independent Government Cost Estimates ("IGCEs")—the government's internal estimates of a contract's potential costs.[4] By law, and according to the terms of a non-disclosure agreement he signed, Mr. Nash was required to keep confidential contractor bid information, including IGCEs.[5]

Mr. Dalbec was the manager of Best Choice Construction LLC ("Best Choice"), a North Dakota limited liability company.[6] Through Best Choice, Mr. Dalbec submitted for and was awarded federal contracts in Alaska, including contracts to perform asbestos abatement and roof repairs at JBER and Eielson Air Force Base in Fairbanks, Alaska.[7] Raihana Nadem is married to Mr. Dalbec and was the owner and registered agent

---

[1] Docket 1 at 2.
[2] Docket 33-6 at 4–5.
[3] *Id.* at 5.
[4] *Id.* at 4–5.
[5] *Id.* at 5–6.
[6] Docket 33-7 at 4–5.
[7] *Id.* at 5–6.

of Best Choice. She assisted Mr. Dalbec in the daily management of the company and helped to prepare and submit bids for federal contracts in Alaska.[8]

Between March 2019 and November 2019, Mr. Nash provided Mr. Dalbec and Ms. Nadem confidential, non-public bidding information related to U.S. military contracts in Alaska, including IGCEs and competitor bids, in exchange for payment of a percentage of the total value of contracts won using the non-public bidding information.[9] Ultimately, all three individuals were charged with federal crimes. In May 2022, Mr. Nash pled guilty to conspiracy, in violation of 18 U.S.C. § 371, and acceptance of a bribe by a government official, in violation of 18 U.S.C. § 201(b)(2)(A).[10] Later, in August 2022, Mr. Dalbec pled guilty to conspiracy, in violation of 18 U.S.C. § 371, and acceptance of a bribe by a government official, in violation of 18 U.S.C. § 201(b)(2)(A) & (C).[11] Both Mr. Nash and Mr. Dalbec admitted to participating in a bribery scheme with respect to five contracts: (1) Asbestos Abatement Contract 1 (FA500019PA021); (2) Asbestos Abatement Contract 2 (FA500019PA026); (3) Eielson Roof Repair Contract; (4) Eielson F-35 Building Contract (FA500420C0003); and (5) Nike Contract (FA500019PA164).[12]

During the period in which Defendants engaged in their bribery scheme, Best Choice submitted certifications attesting to their compliance with Federal Acquisition Regulations ("FARs").[13] Specifically, Ms. Nadem, on behalf of Best Choice, certified

---

[8] *Id.* at 5.
[9] Docket 33-6 at 6–16; Docket 33-7 at 6–15.
[10] Docket 33-6; Docket 64-1.
[11] Docket 33-7; Docket 64-2.
[12] Docket 33-6 at 6–16; Docket 33-7 at 6–15.
[13] Docket 64-3.

compliance with FARs 52.203-11(c), 52.212-3(e), and 52.203-12(b), that, *inter alia*, "no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency . . . on its behalf in connection with the awarding of this contract."[14]

Ultimately, Relator Jacob Halsor filed a *qui tam* complaint and initiated this case on March 30, 2020.[15] On October 31, 2022, the United States elected to intervene pursuant to 31 U.S.C. § 3730(b).[16] In its Amended Complaint, the United States asserted three claims under False Claims Act and alleged that Defendants knowingly presented, or caused to be presented, false or fraudulent claims with respect to federal contracts, and conspired to committed violations of the Act.[17]

At Docket 64, the United States moved for partial summary judgment as to liability. However, at Docket 91, the Court denied the motion, reasoning that the United States had failed to meet its initial burden on summary judgment because it only superficially analyzed the law regarding the FCA and failed to cite the record. The United States now moves that the Court reconsider its order.

## II. LEGAL STANDARD

Reconsideration requires "showing of . . . manifest error of the law or fact; discovery of new material facts not previously available; or intervening change in the

---

[14] *Id.* at 50.
[15] Docket 1.
[16] Docket 31.
[17] Docket 41 at 14–16.

law."[18] Reconsideration is "an extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources."[19] "[A] party must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."[20] Additionally, the three circumstances enumerated in Local Rule 7.3(h)(1) "are the sole grounds for granting a motion for reconsideration; such a motion 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'"[21]

### III. DISCUSSION

The United States points the Court towards the analysis in its Reply at Docket 89 and argues that the Court erred in its conclusion that the United States did not carry its burden in its original motion.[22] The Court concludes that it failed to sufficiently consider the United States' Reply before issuing its initial order and that reconsideration is appropriate. As explained below, the United States' Reply demonstrated that summary judgment as to liability is appropriate.

A. The United States' Claim under 31 U.S.C. § 3729(a)(1)(A)

The United States asserts three causes of action under the False Claims Act against Mr. Nash and Mr. Dalbec and argues summary judgment regarding liability is

---

[18] Local Civil Rule 7.3(h)(1).
[19] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quotations omitted).
[20] *Blakney v. Prasad*, No. 3:18-CV-00098-TMB, 2019 WL 3253961, at *1 (D. Alaska July 19, 2019) (internal quotations and citations omitted).
[21] *Id.* (quoting *Carroll*, 342 F.3d at 945).
[22] Docket 93 at 1–2.

appropriate with respect to each. First, the United States claims that both Defendants, in violation of 31 U.S.C. § 3729(a)(1)(A), "knowingly present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval."[23]

"[A] successful False Claims Act claim requires: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."[24] "With respect to the first element, a claim for payment can be factually false or legally false."[25] "A factually false claim is one in which 'the claim for payment is itself literally false or fraudulent,' such as when the claim 'involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'"[26] By contrast, "[a] legally false claim generally involves a 'knowingly false certification of compliance with a regulation or contractual provision as a condition of payment.'"[27] Legal falsity can be express, such as when a government payee falsely certifies compliance with a particular statute, regulation, or contractual terms, or implied, such as when a payee knowingly and falsely implies entitlement to a payment by submitting a claim.[28] "When . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or

---

[23] 31 U.S.C. § 3729(a)(1)(A).
[24] *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) (internal quotations and citations omitted).
[25] *United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 640 F. Supp. 3d 885, 897 (N.D. Cal. 2022).
[26] *Id.* (quoting *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 675 (9th Cir. 2018)).
[27] *Id.* (quoting *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 741 (10th Cir. 2018)).
[28] *Polukoff*, 895 F.3d at 741.

contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided."[29] Another permissible manner of showing false or fraudulent conduct in the absence of an explicitly false claim is the "fraud-in-the-inducement" theory.[30] "This theory . . . holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct."[31]

With respect to scienter, the FCA requires a defendant acts "knowingly" or with "actual knowledge of the information," "in deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information."[32] The Government need not, however, prove "a specific intent to defraud."[33] And regarding materiality, a false certification is "material" within the meaning of the FCA if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[34]

Here, Mr. Dalbec and Mr. Nash caused to be presented false or fraudulent claims for payment.[35] Together, the two engaged in a bribery scheme in which Mr. Nash

---

[29] *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016) (*Escobar I*).
[30] *U.S. ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1173 (9th Cir. 2006) (adopting the "fraud in the inducement" theory).
[31] *Id.*
[32] 31 U.S.C. § 3729(b)(1)(A).
[33] 31 U.S.C. § 3729(b)(1)(B).
[34] *Escobar I,* 579 U.S. at 192–93.
[35] *United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001) ("[A] person need not be the one who actually submitted the claim forms in order to be liable.").

provided confidential information to Mr. Dalbec so that his company could win federal contracts.[36] At a minimum, the resulting claims for payment were legally false because the underlying contracts were originally obtained through fraudulent conduct. Furthermore, both Mr. Dalbec and Mr. Nash acted knowingly in doing so as they admit in their plea agreements.[37] Finally, the fraudulent conduct was material and caused the United States to pay out monies due, as federal contracting officers do not have authority to pay out claims involving fraud.[38] Had the United States known that the claims for payment involved a fraudulently procured contract, it would have denied the claims it ultimately paid in this case.[39] The undisputed facts show that all elements of the United States' first FCA claim are met and summary judgment on liability for this claim is **GRANTED**.

**B.     The United States' Claim under 31 U.S.C. § 3729(a)(1)(B)**

In its second cause of action, the United States asserts that Defendants, in violation of 31 U.S.C. § 3729(a)(1)(B), "knowingly ma[de], used[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim."[40] The United States argues that Mr. Dalbec and Mr. Nash caused inaccurate certifications of compliance to be created and used.[41] As explained, Mr. Dalbec and Mr. Nash, through their bribery scheme, made fraudulent claims. Along the way, they also caused to be made and used false records material to their fraudulent claim. As part of its claims for payment

---

[36] Docket 33-6 at 6–16; Docket 33-7 at 6–15.
[37] *See* Docket 33-6 at 3–15; Docket 33-7 at 3–15
[38] *See* 41 U.S.C. §§7103(a)(4)(B) & (c)(1); 48 C.F.R. § 33.210(b).
[39] *See* Docket 33-6 at 6–7; Docket 33-7 at 6–7.
[40] 31 U.S.C. § 3729(a)(1)(B).
[41] Docket 93 at 5.

from the United States, Best Choice submitted certifications attesting to their compliance with FARs.[42] The certifications, which included certifications that Best Choice did not pay any person to influence or attempt to influence them in connection with the award of a federal contract, were false. Additionally, these false records were material to the fraudulent claims. As discussed, the United States would not have accepted claims for payment involving a fraud. Summary judgment on liability for the United States' claim under 31 U.S.C. § 3729(a)(1)(B) is **GRANTED**.

## C. The United States' Claim under 31 U.S.C. § 3729(a)(1)(C)

Finally, in its third cause of action, the United States asserts that Defendants, in violation of 31 U.S.C. § 3729(a)(1)(C), "conspire[d] to commit a violation of [the False Claims Act]."[43] Although the Ninth Circuit has not interpreted this provision of the FCA, other courts have applied the general civil conspiracy principles.[44] Civil conspiracy requires "an agreement between two or more persons to injure another by unlawful action."[45] "All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury . . . ."[46] Previously, the Court

---

[42] Docket 64-3.
[43] 31 U.S.C. § 3729(a)(1)(C).
[44] *See U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 546 n.3 (7th Cir. 1999); *accord Garcia v. Am. Pro. Ambulance Corp.*, No. CV1210186DSFMRWX, 2017 WL 11636162, at *3 (C.D. Cal. June 23, 2017).
[45] *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (internal quotations and citations omitted) (discussing conspiracy in the context of the FCA).
[46] *Id.* (internal quotations and citations omitted).

erred in concluding that no conspiracy to violate the FCA existed because the United States failed to show a false or fraudulent claim.

Mr. Dalbec and Mr. Nash both admitted to a conspiracy to defraud the government by rigging bid so that Mr. Dalbec's company could win federal contracts.[47] The two agreed that Mr. Nash would provide Mr. Dalbec confidential, non-public bidding information related to U.S. military contracts in Alaska, including IGCEs and competitor bids, in exchange for payment of a percentage of the total value of contracts won using the non-public bidding information.[48] And they took overt acts in furtherance of this conspiracy by doing just that.[49] As discussed, this scheme violated the FCA. Accordingly, there is no dispute of fact as to the Defendants' liability under 31 U.S.C. § 3729(a)(1)(C). Summary judgment is **GRANTED**.

## IV. CONCLUSION

The United States' *Motion for Reconsideration* at Docket 93 is **GRANTED**. Summary judgment as to Defendants' liability for the three counts alleged in the United States' Complaint is **GRANTED**.

IT IS SO ORDERED this 13th day of May, 2024, at Anchorage, Alaska.

/s/ Joshua M. Kindred
JOSHUA M. KINDRED
United States District Judge

---

[47] *See* Docket 33-6 at 3–15; Docket 33-7 at 3–15.
[48] Docket 33-6 at 6–16; Docket 33-7 at 6–15.
[49] Docket 33-6 at 6–16; Docket 33-7 at 6–15.